# Exhibit 1

# 17-1956-cr(L)

17-1969-cr, 17-2844-cr, 17-2866-cr

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

SARAH ZIRBES,

*Defendant,*

PABLO CALDERON, BRETT C. LILLEMOE,

*Defendants – Appellants.*

On Appeals from the United States District Court for the
District of Connecticut, No. 3:15-cr-25-2(JCH), Hon. Janet C. Hall

**SUPPLEMENTAL ADDENDUM**

David C. Frederick
Brendan J. Crimmins
Andrew E. Goldsmith
Benjamin S. Softness
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Defendant-Appellant
Brett C. Lillemoe*

# TABLE OF CONTENTS

**Page**

Excerpts of International Chamber of Commerce,
*International Standard Banking Practice for the Examination
of Documents under Documentary Credits* 681 (2007 rev.),
http://library.iccwbo.org (purchase required)............................... Supp. Add.1

Excerpts of International Chamber of Commerce,
*International Standard Banking Practice for the Examination
of Documents under UCP 600* 745 (2013 rev.),
http://library.iccwbo.org (purchase required)............................... Supp. Add.8

Excerpts of International Chamber of Commerce,
*ICC Banking Commission Opinions 2009-2011*
(Gary Collyer et al. eds., 2012),
http://library.iccwbo.org (purchase required)............................. Supp. Add.15

Excerpts of International Chamber of Commerce,
*ICC Banking Commission Opinions 2012-2016*
(Gary Collyer ed., 2016),
http://library.iccwbo.org (purchase required)............................. Supp. Add.21

Excerpts of James E. Byrne,
*International Letter of Credit Law and Practice* (2009)............ Supp. Add.33

Excerpts of James E. Byrne et al.,
*UCP600: An Analytical Commentary* (2010)........................... Supp. Add.37

Shahriar Masum, *What is a transport document?*,
International Chamber of Commerce Digital Library,
DC Insight Vol. 15 (Jan.-Mar. 2009),
http://library.iccwbo.org (subscription required) ...................... Supp. Add.40

# International Standard Banking Practice

for the Examination of Documents
under Documentary Credits

2007 Revision for UCP 600





International Chamber of Commerce
*The world business organization*

**Supp. Add.1**

**Copyright © 2007**
**International Chamber of Commerce**

All rights reserved. This collective work was initiated by ICC which holds all rights as defined by the French Code of Intellectual Property. No part of this work may be reproduced or copied in any form or by any means – graphic, electronic, or mechanical, including photocopying, scanning, recording, taping, or information retrieval systems – without written permission of ICC SERVICES, Publications Department.

**ICC Services**
**Publications Department**
38 Cours Albert 1er
75008 Paris
France

**ICC Publication No. 681 E**
ISBN: 978-92-842-0019-1

# Foreword

When the publication *International Standard Banking Practice for the Examination of Documents under Documentary Credits* was approved by ICC in 2002, it was widely acclaimed by letter of credit practitioners worldwide. The ISBP, as it is commonly called, provided an intelligent checklist of items document checkers could refer to in determining how ICC's rules on documentary credits, at the time called UCP 500, applied in daily practice. As such, it filled a needed gap in the market between the general principles in the UCP and the daily job of the practitioner.

Now that UCP 500 has been replaced by UCP 600, it has become necessary to update the ISBP to bring it in line with the new rules. Though much of the ISBP remains unchanged from the 2002 version, certain alterations have had to be made. These are essentially to remove paragraphs from ISBP where the principle has been incorporated in UCP 600; to make technical adjustments in capitalization; to substitute UCP 600 article references for those of UCP 500; to change dates (from 2006 to 2007); and to incorporate changes in ISBP paragraphs necessary to bring the wording in line with wording in UCP 600. Though some of these changes are minor, practitioners would be well advised to have this latest version of the ISBP at hand.

In addition to giving needed guidance to the practitioner, the ISBP was originally created to help reduce the large percentage of documents refused for discrepancies on first presentation. Anecdotal evidence suggests that this objective has been partially attained. Though refusals remain a serious problem with letters of credit, their numbers appear to be declining, in part because of the effectiveness of the checklist contained in the ISBP. Practitioners are urged to refer to this publication whenever doubts arise as to how to structure and check documents in credits utilizing UCP 600.

This revision of the ISBP has been developed by the same Drafting Group that created the final version of UCP 600. Their contribution in time and effort is gratefully acknowledged, and their names and professional affiliations appear below.

© 2007 International Chamber of Commerce

## Chair

**Gary Collyer** – Technical Adviser to the ICC Commission on Banking Technique and Practice

## Members

**Nicole Keller** – Vice President, Service International Products, Dresdner Bank AG, Frankfurt, Germany; Representative to the ICC Commission on Banking Technique and Practice; Trade Finance Advisor, KfW IPEX Bank;

**Laurence Kooy** – Legal Adviser, BNP Paribas, Paris, France; Representative to the ICC Commission on Banking Technique and Practice;

**Katja Lehr** – Business Manager, Trade Services Standards, SWIFT, La Hulpe, Belgium, then Vice President, Membership Representation, International Financial Services Association, New Jersey, USA; Representative to the ICC Commission on Banking Technique and Practice;

**Ole Malmqvist** – Vice President (retired), Danske Bank, Copenhagen, Denmark; Representative to the ICC Commission on Banking Technique and Practice;

**Paul Miserez** – Head of Trade Finance Standards, SWIFT, La Hulpe, Belgium; Representative to the ICC Commission on Banking Technique and Practice;

**René Mueller** – Director, Credit Suisse, Zurich, Switzerland; Representative to the ICC Commission on Banking Technique and Practice;

**Chee Seng Soh** – Consultant, Association of Banks in Singapore, Singapore; Representative to the ICC Commission on Banking Technique and Practice;

**Dan Taylor** – President and CEO, International Financial Services Association, New Jersey, USA; Vice Chairman, ICC Commission on Banking Technique and Practice;

© 2007 International Chamber of Commerce

**Alexander Zelenov** – Director, Vnesheconombank, Moscow, Russia; Vice Chairman, ICC Commission on Banking Technique and Practice;

**Ron Katz** – Policy Manager, ICC Commission on Banking Technique and Practice, International Chamber of Commerce, Paris, France.

**Guy Sebban**

Secretary General
International Chamber of Commerce
Paris, France

June 2007

© 2007 International Chamber of Commerce

**Supp. Add.5**

**c.** "at least 2 days before" indicates that something must take place not later than 2 days before an event. There is no limit as to how early it may take place.

**d.** "within 2 days of" indicates a period 2 days prior to the event until 2 days after the event.

**17.** The term "within" when used in connection with a date excludes that date in the calculation of the period.

**18.** Dates may be expressed in different formats, e.g., the 12th of November 2007 could be expressed as 12 Nov 07, 12Nov07, 12.11.2007, 12.11.07, 2007.11.12, 11.12.07, 121107, etc. Provided that the date intended can be determined from the document or from other documents included in the presentation, any of these formats are acceptable. To avoid confusion it is recommended that the name of the month should be used instead of the number.

## Documents for which the UCP 600 Transport Articles Do Not Apply

**19.** Some documents commonly used in relation to the transportation of goods, e.g., Delivery Order, Forwarder's Certificate of Receipt, Forwarder's Certificate of Shipment, Forwarder's Certificate of Transport, Forwarder's Cargo Receipt and Mate's Receipt, do not reflect a contract of carriage and are not transport documents as defined in UCP 600 articles 19–25. As such, UCP 600 sub-article 14(c) would not apply to these documents. Therefore, these documents will be examined in the same manner as other documents for which there are no specific provisions in UCP 600, i.e., under sub-article 14(f). In any event, documents must be presented not later than the expiry date for presentation as stated in the credit.

**20.** Copies of transport documents are not transport documents for the purpose of UCP 600 articles 19–25 and sub-article 14(c). The UCP 600 transport articles apply where there are original transport documents presented.

© 2007 International Chamber of Commerce

Where a credit allows for the presentation of a copy transport document rather than an original, the credit must explicitly state the details to be shown. Where copies (non-negotiable) are presented, they need not evidence signature, dates, etc.

## Expressions Not Defined in UCP 600

**21.** Expressions such as "shipping documents", "stale documents acceptable", "third party documents acceptable" and "exporting country" should not be used as they are not defined in UCP 600. If used in a credit, their meaning should be made apparent. If not, they have the following meaning under international standard banking practice:

**a.** "shipping documents" – all documents (not only transport documents), except drafts, required by the credit.

**b.** "stale documents acceptable" – documents presented later than 21 calendar days after the date of shipment are acceptable as long as they are presented no later than the expiry date for presentation as stated in the credit.

**c.** "third party documents acceptable" – all documents, excluding drafts but including invoices, may be issued by a party other than the beneficiary. If it is the intention of the issuing bank that the transport or other documents may show a shipper other than the beneficiary, the clause is not necessary because it is already permitted by sub-article 14(k).

**d.** "exporting country" – the country where the beneficiary is domiciled, or the country of origin of the goods, or the country of receipt by the carrier or the country from which shipment or dispatch is made.

© 2007 International Chamber of Commerce

**Supp. Add.7**

# International Standard Banking Practice

## for the Examination of Documents under UCP 600



INTERNATIONAL
CHAMBER
OF COMMERCE

The world business organization

**Supp. Add.8**

**International Standard Banking Practice for the Examination of Documents under UCP 600**

Copyright © 2013

International Chamber of Commerce (ICC)
All rights reserved.

ICC holds all copyright and other intellectual property rights in this collective work. No part of this work may be reproduced, distributed, transmitted, translated or adapted in any form or by any means, except as permitted by law, without the written permission of ICC.

Permission can be requested from ICC through publications@iccwbo.org.

ICC Services
Publications Department
38 Cours Albert 1er
75008 Paris
France

ICC Publication No. 745E

# Introduction

International Standard Banking Practice (ISBP) first approved by the ICC Banking Commission in 2002 (Publication 645) and updated in 2007 (Publication 681), has developed into an invaluable aid to banks, corporates, logistics specialists and insurance companies alike, on a global basis. Participants in ICC seminars and workshops continue to indicate that rejection rates have decreased over the past 11 years, and it would be appropriate to acknowledge that a major contributing factor is the application of the practices detailed in ISBP.

At the time ISBP Publication 645 was approved by the Banking Commission it was stated by a number of national committees that its application had no relationship with UCP 500, mainly due to UCP 500 having been implemented some 8 years previous. With the approval of UCP 600 in October 2006, it became necessary to provide an updated version of the ISBP. It is emphasized that this was an updated version as opposed to a revision of ICC Publication 645. This publication is the first revision of Publication 645.

As a means of overcoming the concerns expressed for Publication 645, and to create a relationship between the UCP and ISBP, the introduction to UCP 600, states: "During the revision process, notice was taken of the considerable work that had been completed in creating the *International Standard Banking Practice for the Examination of Documents under Documentary Credits* (ISBP), ICC Publication 645. This publication has evolved into a necessary companion to the UCP for determining compliance of documents with the terms of letters of credit. It is the expectation of the Drafting Group and the Banking Commission that the application of the principles contained in the ISBP, including subsequent revisions thereof, will continue during the time UCP 600 is in force. At the time UCP 600 is implemented, there will be an updated version of the ISBP to bring its contents in line with the substance and style of the new rules."

The comments appearing in the introduction to UCP 600 have equal value today with this revision of the ISBP. A number of the practices that are described herein have not changed, materially or at all, since their inclusion in Publication 645.

**Supp. Add.10**

The international standard banking practices documented in this publication are consistent with UCP 600 and the Opinions and Decisions of the ICC Banking Commission, with the exception of Opinions R751 and R766 for which ICC will make a separate announcement.

It is important to note that this document does not amend UCP 600. It explains how practices articulated in UCP 600 are to be applied by documentary credit practitioners. This publication and the UCP should be read in their entirety and not in isolation. To emphasize this point, paragraph i. of Preliminary Considerations reads "This publication is to be read in conjunction with UCP 600 and not in isolation." It is, of course, recognized that the law in some countries may compel a different practice than those stated here.

No single publication can anticipate all the terms or the documents that may be used in connection with documentary credits or their interpretation under UCP 600 and the standard practice it reflects. However, the Drafting Group have reviewed and revised this publication to conform to UCP 600.

It should be noted that any term in a documentary credit that modifies or excludes the applicability of a provision of UCP 600 may have an impact on international standard banking practice. Paragraph ii. of Preliminary Considerations emphasizes this point "The practices described in this publication highlight how the articles of UCP 600 are to be interpreted and applied, to the extent that the terms and conditions of the credit, or any amendment thereto, do not expressly modify or exclude an applicable article in UCP 600." This principle is implicit throughout this publication. Where examples are given, these are solely for the purpose of illustration and are not exhaustive.

In a similar vein, ISBP cannot anticipate situations created by poorly or inappropriately drafted credits and the Drafting Group have been diligent in not condoning such issues. The need for care at the application and issuance stage under Preliminary Considerations and the paragraphs covering "Expressions not defined in UCP 600" have been extended and refined.

This publication reflects international standard banking practice for all parties to a documentary credit. Since applicants' obligations, rights and remedies depend upon their undertaking with the issuing bank, the performance of the underlying transaction and the timeliness of any objection under applicable law and practice, applicants should not assume that they may rely on these provisions in order to excuse their obligations to reimburse the issuing bank.

**Supp. Add.11**

The incorporation of this publication into the terms of a documentary credit is deemed inappropriate, as the requirement to follow agreed practices is implicit in UCP 600.

The Drafting Group that brought this important text to fruition deserves special mention. Their names are listed below:

**R.V. Balasubramani**, Director – Senior Advisor, Center of Excellence & Quality Management, Global Trade Finance, BNP Paribas, India

**Graham Christiansen**, Regional Manager Business Risk, Global Trade and Receivables Finance, Europe, HSBC Bank plc, UK

**Carlo Di Ninni**, Consultant to ICC Italy, former Consultant to Italian Bankers Association, Italy

**Wolfgang Heiter**, (retired), Deutsche Bank, Germany

**Ed Jongenelen**, Managing Director, Energy, Commodities & Transportation Services, ABN AMRO, The Netherlands

**Iqbal Ibrahim Karmally**, Senior Vice President, Head of Trade Finance, Sharjah Islamic Bank, UAE

**David Meynell**, Owner, TradeLC Advisory, Ex-Deutsche Bank, UK

**Rene Mueller**, Director, Credit Suisse AG, Switzerland

**Kim Sindberg**, Trade Finance Consultant, Sindberg Consult, Denmark

**Charnell C. Williams**, CDCS, Director, Citi Global Trade Services Product Manager, USA

**Zhongmin Zha**, Deputy General Manager, Branch Manager of Beijing Branch, Head of China Wholesale Banking, CITIC Bank International (China) Limited, China

The Drafting Group's appreciation is also due for the support, input and guidance provided by the ISBP Consulting Group throughout this revision process and that operated under the chairmanship of John Turnbull (UK) and King Tak Fung (Hong Kong).

**Gary Collyer**
Chair, ISBP Drafting Group,
Managing Director, Collyer Consulting LLP, UK
April 2013

Supp. Add.12

## Certificates, Certifications, Declarations and Statements

**A3** When a certificate, certification, declaration or statement is required by a credit, it is to be signed.

**A4** Whether a certificate, certification, declaration or statement needs to be dated will depend on the type of certificate, certification, declaration or statement that has been requested, its required wording and the wording that appears within the document.

For example, when a credit requires the presentation of a certificate issued by the carrier or its agent stating that the vessel is no more than 25 years old, the certificate may evidence compliance by indicating:

a. the date or year the vessel was built, and such date or year is no more than 25 years prior to the date of shipment or the year in which shipment was effected, in which case a date of issuance is not necessary, or

b. the wording as stated in the credit, in which case a date of issuance is required, thereby certifying that as of that date the vessel was not more than 25 years old.

**A5** When a certification, declaration or statement is to appear in a document which is to be signed and dated, it does not require a separate signature or date when the certification, declaration or statement appears to have been given by the same entity that issued and signed the document.

## Copies of transport documents covered by UCP 600 articles 19-25

**A6** a. When a credit requires the presentation of a copy of a transport document covered by UCP 600 articles 19-25, the relevant article is not applicable, as these articles only apply to original transport documents. A copy of a transport document is to be examined only to the extent expressly stated in the credit, otherwise according to UCP 600 sub-article 14 (f).

b. Any data shown on a copy of a transport document, when read in context with the credit, the document itself and international standard banking practice, need not be identical to, but must not conflict with, data in that document, any other stipulated document or the credit.

**Supp. Add.13**

   **c.** Copies of transport documents covered by UCP 600 articles 19-25 are not subject to the default presentation period of 21 calendar days stated in UCP 600 sub-article 14 (c) or any presentation period stated in the credit, unless the credit explicitly states the basis for determining such presentation period. Otherwise, a presentation may be made at any time, but in any event no later than the expiry date of the credit.

## Correction and alteration ("correction")

**A7**    **a. i.** Any correction of data in a document issued by the beneficiary, with the exception of drafts (see paragraph B16), need not be authenticated.

     **ii.** When a document issued by the beneficiary has been legalized, visaed, certified, etc., any correction of data is to be authenticated by at least one of the entities that legalized, visaed or certified, etc., the document. Such authentication is to indicate the name of the entity authenticating the correction either by use of a stamp incorporating its name, or by the addition of the name of the authenticating entity accompanied by its signature or initials.

    **b. i.** Any correction of data in a document, other than in a document issued by the beneficiary, is to appear to have been authenticated by the issuer or an entity acting as agent, proxy or for [or on behalf of] the issuer. Such authentication is to indicate the name of the entity authenticating the correction either by use of a stamp incorporating its name, or by the addition of the name of the authenticating entity accompanied by its signature or initials. In the case of authentication by an agent or proxy, the capacity of acting as agent or proxy for [or on behalf of] the issuer is to be stated.

     **ii.** When a document other than one issued by the beneficiary has been legalized, visaed, certified, etc., any correction of data is, in addition to the requirements of paragraph A7 (b) (i), to be authenticated by at least one of the entities that legalized, visaed or certified, etc., the document. Such authentication is to indicate the name of the entity authenticating the correction either by use of a stamp incorporating its name, or by the addition of the name of the authenticating entity accompanied by its signature or initials.

**Supp. Add.14**

ICC Banking Commission

# OPINIONS
## 2009–2011

New Opinions on

UCP 600, ISBP 681, UCP 500,
URC 522 and URDG 758



International Chamber of Commerce
*The world business organization*

Edited by
**Gary Collyer and Ron Katz**

# ICC BANKING COMMISSION OPINIONS 2009 - 2011

## New Opinions on UCP 600, ISBP 681, UCP 500, URC 522 and URDG 758

Edited by Gary Collyer and Ron Katz



Copyright © 2012

International Chamber of Commerce

All rights reserved. This work was initiated by ICC which holds all rights as defined by the French Code of Intellectual Property. No part of this work may be reproduced or copied in any form or by any means – graphic, electronic, or mechanical, including photocopying, scanning, recording, taping, or information retrieval systems – without written permission of ICC SERVICES, Publications Department.

ICC Services
Publications Department
38 Cours Albert 1er
75008 Paris
France

ICC Publication No. 732E
ISBN: 978-92-842-0164-8

**Supp. Add.17**

# PREFACE

This latest volume of ICC Banking Commission Opinions contains all of the Opinions decided by the Commission during the years 2009-2011. This is the latest in a celebrated series of Commission Opinions books dating back more than four decades.

The previous volume, which covered the years 2005-2008, was published only a year after the latest version of the *Uniform Customs and Practice for Documentary Credits* (UCP 600), came into effect. As a consequence, the majority of Opinions in that book still referenced UCP 500, the previous version of the rules, which dated from 1993.

By contrast, the present volume is heavily slanted toward Opinions on UCP 600. No doubt this is a measure of how well the latest revision of the UCP has taken hold. Widely praised for the clarity and precision of its language, its new structure – particularly article 2 which defines the most common terms used in documentary credits – and its recognition of the key changes having taken place in trade finance, UCP 600 has become the standard text practitioners adhere to when framing transactions using letters of credit.

But as with any rules, no matter how precise, there will always be questions concerning how they are to be applied in daily practice. These Opinions, along with another essential ICC publication, *International Standard Banking Practice for the Examination of Documents under Documentary Credits* (ISBP 681), fills in the details that the UCP, being more general in nature, cannot always provide. Practitioners should note, however, that the Opinions in this volume respond to specific questions raised by queries submitted to the Banking Commission, and the conclusions may be limited to the facts of a particular case.

As in previous volumes, the current publication contains Opinions on other ICC rules as well. Apart from the UCP and ISBP, there are also Opinions on the *Uniform Rules for Collections* (URC 522), the *Uniform Rules for Bank-to-Bank Reimbursements* (URR 725) and the *Uniform Rules for Demand Guarantees* (URDG 758). The latter were revised in 2010, and the current volume contains the first Opinions issued under URDG 758.

I commend this volume to trade finance practitioners everywhere.

Gary Collyer
Technical Adviser
ICC Commission on Banking Technique and Practice
June 2012

There is no data on any required document meeting the above-mentioned conditions. Please advise whether this creates a discrepancy.

---

**Analysis and conclusion**

Clause 1

Sub-article 14 (a) requires that a nominated bank acting on its nomination, a confirming bank, if any, and the issuing bank must examine a presentation to determine, on the basis of the documents alone, whether or not the documents appear on their face to constitute a complying presentation.

Absent the presentation of another insurance document issued in the same context as the quoted clause, we can find no reason to refuse. Sub-articles 28 (h) and (i) also apply.

Clause 2

The insurance document refers to "enclosed" or "attached herewith". By its wording, the document is drawing a distinction between the terms by the separate reference to "attached herewith". In interpreting "enclosed" this can only mean the clauses that are stated on the document itself.

The insurance document refers to "[Country T] General Conditions" and states other applicable clauses. It therefore follows that the "general and specific conditions and clauses" are stated (enclosed) on the document.

The wording on the document is sufficient, provided the stated clauses meet the requirements of the credit in respect of the insurance coverage.

Clauses 3 and 4:

Sub-article 14 (a) states: "[A] nominated bank acting on its nomination, a confirming bank, if any, and the issuing bank must examine a presentation to determine, on the basis of the documents alone, whether or not the documents appear on their face to constitute a complying presentation."

Sub-article 14 (d) states: "[D]ata in a document, when read in context with the credit, the document itself and international standard banking practice, need not be identical to, but must not conflict with, data in that document, any other stipulated document or the credit."

Sub-article 28 (i) states "[A]n insurance document may contain reference to any exclusion clause."

Absent any conflicting data on the other stipulated documents, the wording does not create any conflict and, on the basis of the documents alone, the insurance document will be considered compliant.

---

## UCP 600 sub-article 14 (d)                    R 725
**When a certificate otherwise complies with the requirements of the credit, will the inclusion of a disclaimer text as indicated make that document discrepant?**

### Query            [TA 749]
We kindly ask for your official opinion on the following query related to documents presented under a documentary credit issued subject to UCP 600.

It has been noted that some shipping companies, when issuing certificates (e.g., in respect of the classification, seaworthiness and age of the vessel) are, in addition to the certification required by the credit, including "disclaimer texts" on said certificates.

Here are two examples:

Example 1:

"This certificate does not form part of the contract of carriage and no reliance can be placed upon its contents in support of or as evidenced in the bill of lading no. xxxx. The ship owner's obligations are restricted to the duty to exercise due diligence at the beginning of the voyage to make the vessel seaworthy."

Example 2:
"This certificate does not form part of the contract of carriage and no reliance can be placed upon its contents in support of or as evidence in any dispute or claim under the terms of the contract of carriage as evidenced in the bill of lading no xxxx."

We ask you kindly to advise if these texts make the document discrepant under UCP 600.

**Analysis**
UCP 600 sub-article 14 (d) states "Data in a document, when read in context with the credit, the document itself and international standard banking practice, need not be identical to, but must not conflict with, data in that document, any other stipulated document or the credit."

By inserting the "disclaimer text" the issuer separates the content of the certificate from their contract of carriage. Neither this action nor the wording of the disclaimer will create a conflict with the data that is required to appear in the certificate.

> **Conclusion**
>
> Provided a certificate otherwise complies with the requirements of the credit, the inclusion of a disclaimer text as indicated above will not make that document discrepant.

## UCP 600 sub-articles 14 (d), 16 (c), 16 (c) (iii) (a), 16 (c) (iii) (d) and 16 (f)    R 726

**Where the credit required the presentation of a freight invoice that was both dated and signed and the document was signed, but there was doubt that the date appearing thereon related to the document or the date of the bill of lading; where, contrary to the specific instructions of the advising bank, the confirming bank sent the documents to the issuing bank, was the confirming bank precluded from claiming the documents were discrepant?**

### Query          [TA 723rev]
We kindly ask your opinion regarding the following matter. An L/C was issued by Bank A (subsidiary of Bank B), confirmed by Bank B and advised by Bank C (us). The SWIFT advice of Bank B stated, amongst other conditions: "In case of presentation of discrepant documents, Bank B will send them on an agreement basis to issuing bank unless otherwise specified on your cover letter."

The required documents in the L/C included the following document:
- Freight invoice dated and signed in original plus 2 copies issued by the shipping company or its agent;
- Latest presentation date was 15 April 2009.

On 26 March, the exporter presented documents for EUR345,369.58. We presented documents to Bank B for negotiation, with the stipulation that the documents should remain at our disposal until taken up by it. Among the documents was the freight invoice which

# ICC BANKING COMMISSION
# OPINIONS
# 2012-2016



Edited by
Gary Collyer

**Supp. Add.21**

**ICC BANKING COMMISSION OPINIONS 2012-2016**

© 2016 International Chamber of Commerce

All rights reserved.

ICC holds all copyright and other intellectual property rights in this collective work.

No part of this work may be reproduced, distributed, transmitted, translated or adapted in any form or by any means, except as permitted by law, without the written permission of ICC.

Permission can be requested from ICC through publications@iccwbo.org

ICC Services
Publications Department
33-43 avenue du Président Wilson
75116 Paris
France
ICC Publication No. 785E
ISBN: 978-92-842-0397-0

# Contents

PREFACE

CHAPTER 1 OPINIONS ON UCP 600

CHAPTER 2 OPINIONS ON ISBP 681

CHAPTER 3 OPINIONS ON ISBP 745

CHAPTER 4 OPINIONS ON URC 522

CHAPTER 5 OPINIONS ON URDG 758

APPENDIX 1 INDEX BY "R" REFERENCE NUMBERS AND ARTICLES

APPENDIX 2 CROSS REFERENCE INDEX"TA", "TA REV" AND

"R" NUMBERED OPINIONS

APPENDIX 3 KEY WORD INDEX

ABOUT THE EDITOR GARY COLLYER

ICC AT A GLANCE

# Preface

Gary Collyer

This latest volume of ICC Banking Commission Opinions contains all of the Opinions decided by the Commission during the years 2012-2016 in the sequence TA755rev-TA840rev. This is the latest in a celebrated series of Commission Opinions books dating back more than four decades, and the third to include Opinions on letters of credit issued subject to UCP 600.

As with the previous volume, which covered the years 2009-2011, the majority of Opinions are in respect of transactions subject to UCP 600 and the International Standard Banking Practice publications 681 and, now, 745.

The slant toward Opinions on UCP 600 is no doubt a further measure of how well the rules have taken hold. Widely praised for the clarity and precision of its language, its structure – particularly article 2 which defines the most common terms used in documentary credits – and its recognition of the key changes that had taken place in trade finance, UCP 600 is the standard text practitioners adhere to when framing transactions using letters of credit.

But as with any rules, no matter how precise, there will always be questions concerning how they are to be applied in daily practice. The terms and conditions of letters of credit very often modify or exclude the application of one or more rules, which can lead to disputes on interpretation of a clause or documentary requirement. These Opinions, along with another essential ICC publication, International Standard Banking Practice for the Examination of Documents under Documentary

Credits (ISBP 745), fill in the details that the UCP, being more general in nature, cannot always provide.

Practitioners should note, however, that the Opinions in this volume respond to specific questions raised by queries submitted to the Banking Commission, and the conclusions are very often limited to the facts of a particular case. As in previous volumes, the current publication contains Opinions on other ICC rules as well. Apart from the UCP and ISBP, there are also Opinions on the Uniform Rules for Collections (URC 522), the Uniform Rules for Bank-to-Bank Reimbursements (URR 725) and the Uniform Rules for Demand Guarantees (URDG 758). I commend this volume to trade finance practitioners everywhere.

credit should also indicate that SWIFT charges will be deducted and the fee. The statement of the nominated bank that it did not request a SWIFT advice is of no relevance as an issuing bank that receives a discrepant presentation is obliged to give a single notice to the presenter, by telecommunication or other expeditious means, in accordance with UCP 600 sub-articles 16 (c) and 16 (d).

An issuing bank should not deduct a fee in respect of SWIFT messages sent in relation to any payment under the credit, or any advising of such payment.

> CONCLUSION

1. None of the discrepancies are valid.
2. The form of the notice of refusal is acceptable, subject to the comments made in the Analysis.
3. An issuing bank that intends to deduct SWIFT charges, in addition to any stated discrepancy fee, should indicate this condition in its credit.

# ISBP 681 paragraphs 115 and 20; UCP 600 sub-article 14 (f) and article 20; ISBP 745 paragraphs A6 (a) and A19 | R854

**When a standby letter of credit requires the presentation of a copy of a bill of lading when shipment is effected by vessel, and states such document will be accepted as presented, subject to the fulfilment of two conditions, is a copy of a charter party bill of lading acceptable?**

(**TA**790**rev**)

A standby letter of credit was available by sight payment with the issuing bank and contained the following additional conditions inter-alia:

47A: Additional Conditions:

+ In case of the documents show a shipment by vessel, a photocopy of original bill of lading must be presented with the other documents.

The photocopy of bill of lading will be accepted by us as presented except if not complying with the next two conditions:

1. In case of sea transport, the transport document must indicate IMO ship number of carrying vessel.
2. Shipment by a shipping co and/or by ship under sanctions US/EU/UN are forbidden

The beneficiary presented to the advising bank a photocopy of a charter party bill of lading together with the other required documents.

The issuing bank refused to honour stating the following discrepancy:

Presentation of B/L used with charter party, not foreseen in the SBLC terms (as per paragraph 115 of ISBP).

Advising bank sent the following message to the issuing bank:

We draw your attention on the terms of your SBLC: 47A: additional conditions: the photocopy of bill of lading will be accepted by us as presented except ..... and especially on paragraph 20 of ISBP: 20) copies of transport documents are not transport documents for the purpose of UCP600 articles 19-25 and sub-article 14 (c) UCP600.

Transport articles apply where there are original transport documents presented. Where a credit allows for the presentation of a copy transport document rather than an original, the credit must explicitly state the details to be shown. Where copies (non-negotiable) are presented, they need not evidence signature, dates, etc. therefore, paragraph 115 of ISBP (Pub 681) is not applicable. We would like you to check this matter again and confirm the payment and also value applied.

The issuing bank maintained its refusal and did not honour the documents.

We would be grateful if you would kindly provide us with

your opinion as to whether the issuing bank has the right refuse payment under the standby letter of credit on the basis of the discrepancy raised.

> ANALYSIS

According to the additional conditions of the standby letter of credit, presentation of a photocopy of an original bill of lading was required when any document presented under the standby letter of credit indicated that the means of transport was a ship. The standby letter of credit stipulated two requirements for the photocopy (the fulfilment of which is not under dispute) but at the same time stated that the photocopy of a bill of lading will be accepted as presented.

UCP 600 articles 19 – 25 covering transport documents, only apply when a credit requires presentation of at least one original transport document. A requirement for presentation of a photocopy of a transport document would fall under UCP 600 sub-article 14 (f) which states:

If a credit requires presentation of a document other than a transport document, insurance document or commercial invoice, without stipulating by whom the document is to be issued or its data content, banks will accept the document as presented if its content appears to fulfil the function of the required document and otherwise complies with sub-article 14 (d).

For a presentation of a photocopy of an original transport document UCP 600 sub-article 14 (f) applies (see also ISBP 745 paragraph A6 (a)) which determines the standard of examination of such photocopies. A photocopy of a transport document has no apparent function under a standby letter of credit other than in demonstrating that transport has taken place.

The term "accepted by us as presented" does not by itself have a definite meaning under UCP 600 as to the extent of the disclaimer intended by the issuing bank. Without

defining the meaning of such term, issuing banks should not include it into the wording of any credit. ISBP 745 paragraph A19 (g), offers — in the absence of such a definition — the following clarification:

a presentation may consist of one or more of the stipulated documents provided they are presented within the expiry date of the credit and the drawing amount is within that which is available under the credit. The documents will not otherwise be examined for compliance under the credit or UCP 600, including whether they are presented in the required number of originals or copies.

The standby letter of credit stated two specific requirements for the photocopy of an original bill of lading neither of which was a requirement to examine it under UCP 600 article 20.

By inclusion of those specific requirements, the issuing bank has precluded itself from refusing the document based on any other discrepancy than the two mentioned.

> CONCLUSION

The discrepancy cited by the issuing bank is not valid under the terms of the standby letter of credit and the issuing bank would be required to honour the presentation.

# ISBP 681 paragraph 174; UCP 600 sub-article 28 (a) | R855

**One co-insurer signs an insurance policy, but does it require signing by the other named co-insurer?**

(**TA**759)

An insurance policy with the following information was presented under a documentary credit.

Sum insured: US$284,311.79 (110pct of the invoice value)

| | | |
|---|---|---|
| ABC Insurance Ltd. | 60% | US$170,587.07 |
| | | |

same meaning.

## ISBP 745 paragraph A6 (a); UCP 600 sub-articles 20 (a) (i), 20 (a) (iv), 14 (f) and 26 (a); UCP 600 article 27 | R857

**Can a copy of a bill of lading indicate that the original was signed by a freight forwarder in the capacity of "forwarder" as opposed to being signed as carrier or agent of a named carrier?**

(**TA**827**rev**)

A documentary credit required the presentation of a copy of a bill of lading without any further condition. The issuing bank refused the documents citing the discrepancy:

b/l is signed by a forwarder i/o carrier, master or their agent.

It is seen from the face of the bill of lading that it is signed by a freight forwarder in the capacity of "forwarder" instead of the carrier, master or their named agent.

The beneficiary rejected the refusal of the issuing bank by referring to ISBP 745 paragraph A6:

When a credit requires the presentation of a copy of a transport document covered by UCP 600 articles 19-25, the relevant article is not applicable, as these articles only apply to original transport documents. A copy of a transport document is to be examined only to the extent expressly stated in the credit, otherwise according to UCP 600 sub article 14 (f).

The issuing bank did not accept the beneficiary's rejection and stated:

It is not required for a copy of a transport document to be signed but if it is signed it should be in accordance with sub-art. 20 of UCP 600.

We would like to have an official opinion of the ICC Banking Commission as to the below questions;

1. Should the signing of the copy of the bill of lading in the

capacity of "forwarder" make the presentation discrepant?

2. Whether it is a discrepancy if the copy of a transport document indicates that the goods are or will be loaded on deck or indicates a clause or notation expressly declaring a defective condition of the goods or their packaging?

> ANALYSIS

UCP 600 sub-article 20 (a) (i) requires a bill of lading

to indicate the name of the carrier and be signed by:

> the carrier or a named agent for or on behalf of the carrier, or

> the master or a named agent for or on behalf of the master.

UCP 600 sub-article 20 (a) (iv) also states:

be the sole original bill of lading or, if issued in more than one original, be the full set as indicated on the bill of lading.

Requirements in UCP 600 article 20 only apply when a credit requires the presentation of at least one original bill of lading. A requirement for the presentation of a copy of a bill of lading would fall under UCP 600 sub-article 14 (f), which states:

If a credit requires presentation of a document other than a transport document, insurance document or commercial invoice, without stipulating by whom the document is to be issued or its data content, banks will accept the document as presented if its content appears to fulfil the function of the required document and otherwise complies with sub-article 14 (d).

This is clarified in ISBP 745 paragraph A6 (a) which states:

When a credit requires the presentation of a copy of a transport document covered by UCP 600 articles 19-25, the relevant article is not applicable, as these articles only apply to original transport documents. A copy of a transport document is to be examined only to the extent expressly stated in the credit, otherwise according to UCP 600 sub-article 14 (f).

Unlike an original bill of lading, a copy of a bill of lading does not serve the function of a negotiable document, which has to be surrendered in exchange for the goods. The function of a copy of a bill of lading is to provide information on the shipment. Therefore, unless a credit, which calls for a copy of bill of lading, also specifies the manner in which the copy is to be signed, the signature need not comply with the requirements of UCP 600 sub-article 20 (a) (i). A signature need not even appear at all on a copy of a bill of lading.

A copy of a bill of lading is not considered a transport document for the purpose of examination of documents under UCP. Therefore, requirements of UCP 600 sub-article 26 (a) (loading of goods on deck) and article 27 (clean transport document) do not apply to a copy of a bill of lading.

> CONCLUSION

A copy of a bill of lading, signed by a freight forwarder in its capacity as forwarder, without acting on behalf of the carrier, is not discrepant.

A copy of a bill of lading which indicates that the goods are or will be loaded on deck or includes a clause or notation expressly declaring a defective condition of the goods or their packaging is not discrepant.

# ISBP 745 paragraph E27 (b); UCP 600 article 13; UCP 600 sub-articles 26 (c), 14 (d) and 14 (a) | R858

**Does a bill of lading marked "Free Out" comply with terms of delivery "CPT Alexandria Port, Egypt without unloading cost"; delays in reimbursement due to non-issuance of a reimbursement authorisation; were charges levied by the reimbursing bank appropriate?**

# International Letter of Credit Law and Practice

**2009-2010 Edition**
**Issued in October 2009**

By

**James E. Byrne**

**Ramsey Saleeby**
Assistant Editor

**Sean G. Penny**
Research Editor



A Thomson Reuters business

*For Customer Assistance Call 1-800-328-4880*

Mat #40863567

©2009 Thomson Reuters

Official text and comments of the Uniform Commercial Code reproduced with permission of the National Conference of Commissioners on Uniform State Laws and the American Law Institute. Copyright ©2009 National Conference of Commissioners on Uniform State Laws and the American Law Institute.

The author expresses his appreciation to the Institute of International Banking Law & Practice, 20405 Ryecroft Court, Montgomery Village, Maryland, USA 20886, for permission to use its copyrighted materials that were excerpted in connection with the treatment in this volume of the Chinese LC Rules including the English translation, abstracts of various LC cases, the materials on ISP98, reproduction of the text of ISP98, and the materials on UCP600. These materials may not be reproduced in any manner without the express permission of the Institute.

This publication was created to provide you with accurate and authoritative information concerning the subject matter covered; however, this publication was not necessarily prepared by persons licensed to practice law in a particular jurisdiction. The publisher is not engaged in rendering legal or other professional advice and this publication is not a substitute for the advice of an attorney. If you require legal or other expert advice, you should seek the services of a competent attorney or other professional.

Library of Congress

2011          287044

signature, mark, stamp, or label affixed by the issuer of the document.[1]

UCP600 Article 17(c) (Original Documents and Copies) appears to parallel UCP500 Article 20(b) (Ambiguity as to the Issuers of Documents) by indicating how a document can "also" be accepted as an original. In fact, the parallel is not exact. Whereas the methods of production detailed in UCP500 Article 20(b) (Ambiguity as to the Issuers of Documents) indicate that the originality of the document was in doubt, there should be no doubt about originality where a document appears to be written in its issuer's hand. It is difficult, therefore, to distinguish between UCP600 Article 17(b) and (c) (Original Documents and Copies). UCP600 Article 17 (Original Documents and Copies) omits any reference to the production of a document, properly focusing on appearances.

## § 34:10 UCP600 Article 17—What constitutes a copy

UCP600 Article 17 (Original Documents and Copies) abandons the assumption inherent in UCP500 Article 20(c)(i) (Ambiguity as to the Issuers of Documents) that a document was to be regarded as a copy unless it was clearly an original.[1]

Like UCP500 Article 20 (Ambiguity as to the Issuers of Documents), UCP600 does not define "copy." As noted in ISBP (2003) ¶ 33 and ISBP (2007) ¶ 30, the term "copy" has multiple meanings in English and does not necessarily mean an exact reproduction or "photocopy." Indeed, in some contexts, "copy" is used to mean "original." Therefore, unless the credit expressly requires a "photocopy," a copy can contain less data than the original or more. Where the copy contains less data than the original, including a signature, a

---

**[Section 34:9]**

[1]The text of UCP600 and ISBP (2007), which supplements it, are contained in the current edition of LC Rules & Laws: Critical Texts. For an authoritative commentary on UCP600, see James Byrne, The Analytical Commentary on UCP600, available online at www.iiblp.org.

**[Section 34:10]**

[1]The text of UCP600 and ISBP (2007), which supplements it, are contained in the current edition of LC Rules & Laws: Critical Texts. For an authoritative commentary on UCP600, see James Byrne, The Analytical Commentary on UCP600, available online at www.iiblp.org.

679

document that is customarily accepted to pass as a copy, containing the operative data, constitutes a copy unless the context reveals that a special type of copy is required. In those circumstances, the better interpretation is that the "copy" need not contain the copy of a signature contained in the original. If a photocopy is required, the bank should make the number of photocopies missing and charge the beneficiary and appropriate fee for material and labor.

UCP600 Article 17(d) (Original Documents and Copies) reverses the implied rule of UCP500 Article 20(c)(i) (Ambiguity as to the Issuers of Documents) that a bank would not accept a document marked as an original where the LC required presentation of a copy in favor of a rule that more accurately reflects practice, namely that either an original or copy would be acceptable in such a situation.

## § 34:11   ISP98 Rule 4.15

ISP98 Rule 4.15[1] provides:

### Rule 4.15 Original, Copy, and Multiple Documents

a. A presented document must be an original.

b. Presentation of an electronic record, where an electronic presentation is permitted or required, is deemed to be an "original".

c.

i. A presented document is deemed to be an original unless it appears on its face to have been reproduced from an original.

ii. A document which appears to have been reproduced from an original is deemed to be an original if the signature or authentication appears to be original.

d. A standby that requires presentation of a "copy" permits presentation of either an original or copy unless the standby states that only a copy be presented or otherwise addresses the disposition of all originals.

e. If multiples of the same document are requested, only one must be an original unless:

---

**[Section 34:11]**

[1]ISP98 Rule 4.15. For an authoritative analysis of ISP98, see The Official Commentary on ISP98 (2nd Ed. IIBLP.org 2009). The Institute also makes available a comprehensive online training course, ISP98 Master Training.

680

# UCP600: An Analytical Commentary

by

## Professor James E. BYRNE

Director, Institute of International Banking
Law & Practice
Faculty, George Mason University School of Law

with

## Vincent M. MAULELLA

International Trade Specialist and Consultant
Associate Director, Institute of International
Banking Law & Practice

## SOH Chee Seng

Chief Consultant, DCTrade Consultants Singapore
Technical Advisor on Trade Finance Issues
to the Association of Banks in Singapore

## Alexander V. ZELENOV

Director, Financial Institutions,
Vnesheconombank Moscow
Vice Chair, ICC Banking Commission

## C. Copies

21. **Assumption Document is a Copy.** UCP600 Article 17 abandons the assumption inherent in UCP500 (1993) Article 20(c)(i) (Ambiguity as to the Issuers of Documents) that a document was to be regarded as a copy unless it was clearly an original. It is doubtful that this rule reflected standard international letter of credit practice. What has replaced the assumption, however, is less clear and not stated explicitly. The best interpretation is that where the credit requires an original, a document should be deemed to be an original unless it appears to be a copy and where it requires a copy, the document should be deemed a copy unless it appears to be an original. As will be discussed, originality of a document where a copy is required is rarely a difficulty.

22. **What is a "Copy"?** Neither UCP Article 17 nor any other provision in UCP600 define or explain what constitutes a "copy".

    a. The term "copy" is used in a variety of senses in standard practice and its intended meaning can only be determined from the context in which it is used. ISBP (2007) ¶ 30 notes that "[i]t can sometimes be difficult to determine from the wording of a credit whether it requires an original or a copy, and to determine whether that requirement is satisfied by an original or a copy." Where the credit expressly requires presentation of a document such as a beneficiary's certificate "in one copy", presentation of a copy is not a discrepancy.[40] As noted in ISBP (2003) ¶ 33 and ISBP (2007) ¶ 30, the term "copy" has multiple meanings in English.

    b. Where what is intended is a "copy" in the sense of a document that is not an original, it is difficult to explain the precise relationship between the original and the copy.

    c. If the term is used in the sense of a "photocopy", it signifies an exact replication of the original and under modern machines even to the extent of a replication of colored portions although not raised or with otherwise uneven surfaces.[41] Because of the prevalence of photocopy machines, it is common to assume that a "copy" is an exact replication of the original. This assumption is not warranted in letter of credit practice. Where an exact replication is required, the credit must so state and the term "copy" does not capture this notion.

    d. Absent use of the term "photocopy" or a similar term, a "copy" need not contain a literal replication of the original in every respect.[42] It is common for copies to contain less data than an original. Moreover, a copy can contain additional data not present on an original without compromising its status as a copy. The most obvious factor is the presence of the term "COPY" on a copy where it is not present on an original. Other data can be present on a copy and not on an original as well as less data. Indeed, some forms that are copies omit information that is contained on the original. The copy may be a partial replication of it with certain portions omitted, as in certain types of forms that only carry forward certain data or that contain additional information or data, provided that this information does not contradict

---

40. ICC Opinion R 440 Q3 (UCP500) ("Beneficiary's Certificate in one copy certifying that 1/3 original B/L [etc.] have been sent to applicant" via courier). As noted above with respect to whether an original is required, this opinion could be interpreted and explained in various ways.

41. ICC Opinion R 437 (UCP500) (explaining the meaning of "of another document" in ICC Originals Decision ¶ 3.4) ("Photocopy is itself a document that is reproduced from another document" which is considered to be the "original" of the photocopy although the photocopy is the "original" in the sense that it is the document presented) (Reference in ICC Decision on Originals to photocopy of another document suggests that the photocopy which is a document replicates another document).

42. ICC Opinion R 199 (UCP400) (credit requirement of 6 copies of invoice satisfied by presentation of 4 "copies" and 2 "photocopies").

---

the operative terms of the original.[43] ISBP ¶ 32 recognizes this point by indicating that copies need not be signed, even though the original document is presumably signed and that alterations on copies need not be authenticated.[44] However, it is expected that the copy contain the core information, relative to the purpose of the document in the letter of credit presentation, in a form that replicates that of the original.[45]

e.  Where there is no specificity in the credit, a requirement that "copies" be presented can be satisfied by any type of copy.[46] Where there is specificity as to the type of copy required, presentation of a different type of copy would not comply unless it were understood to be the functional equivalent.

f.  The provision indicates that a copy need not be marked as such, but it must not be marked as an "original".

g.  Given these considerations, a copy is a document that captures the essential or operative data on another document but may add or omit non-essential information.

23.  **Copies Need not be Signed.** For reasons that are not clear, UCP600 did not carry over the last provision of UCP500 (1993) Article 20(c)(i) (Ambiguity as to the Issuers of Documents), providing that copies need not be signed.[47] That rule, however, was added to ISBP (2007) as ¶ 32, in effect demoting it. That Paragraph provides that "[c]opies of documents need not be signed."

24.  **When a "Copy" is an Original.** For some types of transport, the document given to the shipper is not a document of title and could possibly be classified as a "copy" in that it is the version of the transport document intended to be given to the shipper or consignor. UCP600 Articles 23(a)(v) (Air Transport Document) and 24(b) (Road, Rail or Inland Waterway Transport Documents) address these issues and are supplemented by ISBP (2007) ¶¶ 136 and 158, respectively. UCP600 Article 25 (Courier Receipt, Post Receipt or Certificate of Posting) does not even address the issue of originality, in part, because what constitutes the "document" given to the shipper or consignor has changed rapidly and radically in recent years. In these circumstances, what may be a "copy" is, in fact, the "original" that is intended to be presented under the credit.

25.  **Satisfaction of the Requirement of a "Copy" by Presentation of an Original.** UCP600 Article 17(d) reverses the implied rule of UCP500 (1993) Article 20(c)(i) (Ambiguity as to the Issuers of Documents), that a bank would not accept a document marked as an

---

43.  ICC Opinion R 337 (UCP500) (stating that "[a] non-negotiable bill of lading should "mirror" an original bill of lading to the extent of content - including any alteration thereon" without explaining "mirror" or "content" which presumably means the operative portions of the document.)

44.  ICC Opinion R 337 (UCP500) (non-negotiable bill of lading not required to be signed and alterations need not be authenticated).

45.  Concern with this issue is contained but poorly expressed in ICC Opinion R 337 (UCP500) (non-negotiable bill of lading should "mirror"original "to the extent of content" and would include alterations).

46.  ICC Opinion R 199 (UCP400) (required copies could be provided "in one format or a combination of various formats, such as carbon copies, photocopy or xeroxed copy").

47.  The *Drafters' Commentary* states that "[c]opies of documents need not be signed." The position regarding copies not requiring a signature is *also* covered in ISBP (2007), ICC Publication No. 681, paragraph 32 (page 76) [emphasis added]. This statement is somewhat puzzling since UCP600 Article 17(d) deletes this provision from the corresponding UCP500 (1993) article in 20(c)(i) (Ambiguity as to the Issuers of Documents). The use of the term "also" seems to suggest that the statement in the ISBP about signatures is in addition to the provision in UCP600. Some commentators have speculated that there was an inadvertent omission of the provision which was rectified by inserting it in the 2007 revision of the ISBP. Such speculation is reinforced by the absence of any mention of the demotion of the provision during the drafting process and the failure to offer any justification for it.



**Copyright © International Chamber of Commerce (ICC). All rights reserved.**
( Source of the document: ICC Digital Library )

# DCInsight Vol. 15 No.1 January - March 2009

## Transport documents



**ARTICLE**

by Shahriar Masum

*What is a transport document? The UCP has no definition for it, but at times this is an important question.*

After a search, I found the most acceptable definition at businessdictionary. com, which says that such a document is an "air waybill, bill of lading, carrier's certificate, etc., that serves as an evidence of acceptance and receipt of goods for carriage and may also serve as a document of ownership (title)."

Precisely. It's an evidence of shipment. "Evidence" is a significant word. After all, this is the purpose of a transport document, especially in a world in which "Banks deal with documents and not with goods, services or performance." (UCP 600 article 5) It's the transport document in which a document checker can visualize, for example, the ship on which the concerned cargo is loaded. Pieces of information on a transport document provide a clear picture for the document checker ... how the cargo is shipped, when it is shipped, from which port it is shipped, etc.

However, this clear picture will suddenly become hazy if the information before the document checker is on a "copy of a transport document". ISBP 681 clearly warns about this: "Copies of transport documents are not transport documents ... (ISBP 681 paragraph 20)." Why is this the case? The answer is logical. A copy is less likely to have a signature, an on board notation, etc., which, in some UCP transport articles, are mandatory requirements.

**Supp. Add.40**

ISBP 681 paragraph 20 continues: "The UCP 600 transport articles apply where there are original transport documents presented. Where a credit allows for the presentation of a copy transport document rather than an original, the credit must explicitly state the details to be shown. Where copies (non-negotiable) are presented, they need not evidence signature, dates, etc."

This sounds logical, but it is only one side of the story. The wording appears to make life simple, but for whom - the issuer, the checker or the beneficiary? It's not for the document checker, that's for sure, since he or she is getting a hazy picture or is not seeing at all.

*ISBP*

ISBP 681 says that when the L/C calls for a copy of a transport document, the L/C must include information about the content of that copy. But if the copy means a photocopy, then including the content of a photocopy will mean including the content of the original, because a photocopy itself cannot have any extra data; it's a copy of an original, an original whose content is already well-defined in UCP articles 19-25. So, in my view, if you are a document checker, you cannot raise a discrepancy even if the content of the copy is not in compliance with the UCP 600 transport articles that would apply had the L/C called for an original. Why is this the case?

Before answering this, it is well to turn again to ISBP 681 paragraph 20, where one finds the term "non-negotiable" in parenthesis just after the word "copy". What does this mean - that a copy means a non-negotiable copy? The intention of the ISBP Drafting Group is not clear, but it is quite common that some of the information on the original won't be available on the non-negotiable copy, such as the signature of the carrier, the on board notation, etc., as already mentioned earlier. So, one apparently cannot review a non-negotiable copy under the UCP transport articles.

But this does not mean that the nonnegotiable copy will be a blank form. It will still contain some of the data on the original - for example, a non-negotiable copy of a bill of lading will include the ports of loading and discharge, the vessel name, the names of the consignee, the shipper, etc., and this information needs to be examined.

The question arises: if the copy of a transport document is not a transport document, then under which UCP article should it be examined? The only possible option is sub-article 14 (f ), which says: "If a credit requires presentation of a document other than a transport document, insurance document or commercial invoice, without stipulating by whom the document is to be issued or its data content, banks will accept the document as presented if its content appears to fulfil the function of the required document and otherwise complies with sub-article 14 (d)."

At this point it should be noted that this sub-article allows a copy of a transport document to be issued by anyone. For example, if a photocopy of a B/L is signed by the beneficiary in the capacity of the beneficiary, there will be no discrepancy.

*Fulfilling the function*

The sub-article also speaks about a document "fulfilling the function" of a required document. What does this phrase mean? The Drafting Group's Commentary on UCP 600 says: "This requirement means that it must be determinable that the document fulfils the intent required. This does not mean, however, that a document checker must have knowledge [emphasis added] of all of the specific requirements for the document, but rather that he must be able to recognize [emphasis added] that its intended purpose is that required in the documentary credit." In one example, the Commentary also says: "If an applicant requests a document as simple as a 'packing list' without further description, it must have some expectations [emphasis added] as to the content of that document." It adds: "The consignee stated in the certificate of origin is there for customs purposes, whereas the consignee in the bill of lading refers to the function of the document as a document of title."

All the wording of the Commentary on UCP points to one point: the knowledge and expectations of the document checker. I would add that the ISBP also deals with expectations, even if that word does not appear in UCP 600 or ISBP 681.

*Differences*

What are the differences that a copy of a bill of lading, for example, may have from a original bill of lading?

1. It can be issued by anyone, even by the beneficiary;

**Supp. Add.42**

2. An on board notation and date of issuance are not required;

3. The details concerning the consignee need not be an exact match with the L/C, as per sub article 14 (j);

4. The ports of loading and discharge, however, need to match to avoid a data conflict, unless the presented copy shows "intended vessel" or a similar qualification;

5. The name of the vessel need not be stated;

6. The goods may be shipped on deck;

7. It may be a charter party bill of lading.

While reference has been made to a bill of lading in this article, this analysis is applicable to other transport documents as well. Therefore, my interpretation is that theoretically a copy of a transport document may be a wholly other document from its original, and the document checker would have to accept it, since there is no standard enabling him/her to raise objections. Some claim the solution is in the ISBP in that one must take into account the "content" of the copy of the transport document. But what does this mean: the information mentioned in the UCP transport article or the name of the vessel on a copy of the air waybill? In one way or another, banks are likely to include the requirements mentioned in the transport articles in the L/C terms while, at the same time, asking for a copy of the transport document.

The question remains: whose job is made easier by considering a copy of a transport document not to be a transport document?

In my view, even though a copy of a transport document may not be a transport document, it should still be subject to review under the transport articles "to the extent they may be applicable", at least for the content mentioned in the non-negotiable copy of the document. This will eliminate the risks related to points 3-7 above without affecting the interests of an honest beneficiary. In this way, a document checker will be able to match the reality with his or her expectations.

"*Shahriar Masum* is an executive officer in charge of trade service at City Bank in Bangladesh. His e-mail is shahriar2004@gmail.com "